**Daniel ORTEGA, Petitioner–Appellant,**

v.

**Michael O'LEARY, Warden,
Respondent–Appellee.**

**No. 86–2867.**

United States Court of Appeals,
Seventh Circuit.

Argued March 1, 1988.

Decided March 21, 1988.

As Amended April 4, 1988.

Howard B. Eisenberg, Southern Illinois Univ., School of Law, Carbondale, Ill., for petitioner-appellant.

William P. Pistoorius, Asst. Atty. Gen., Chicago, Ill., for respondent-appellee.

Before CUMMINGS, WOOD and FLAUM, Circuit Judges.

FLAUM, Circuit Judge.

On November 15, 1982, Daniel Ortega was convicted by an Illinois state circuit court on two counts of indecent liberties with a child, and was sentenced to concurring terms of nine years imprisonment. On appeal, one of the counts was vacated, but the court affirmed Ortega's conviction in all respects. Ortega's subsequent appeals to the Illinois Supreme Court and the United States Supreme Court were unsuccessful. *People v. Ortega*, 125 Ill.App.3d 1181, 89 Ill.Dec. 820, 481 N.E.2d 371 (5th Dist.1984), *cert. denied*, 469 U.S. 1220, 105 S.Ct. 1206, 84 L.Ed.2d 348 (1985). A writ of habeas corpus under 28 U.S.C. § 2254 was filed on October 22, 1985. After a limited hearing by a magistrate, the writ was denied on September 30, 1986. This appeal followed. We affirm.

### I.

Ortega was charged with having had sexual intercourse with a fourteen-year old girl on the evening of August 4, 1982. At the trial, the prosecution introduced testimony from the victim who implicated Ortega. Other witnesses corroborated the victim's testimony in many respects. The victim's sister testified that she had accompanied her sister to Ortega's trailer that night. She stated that Ortega had admitted having intercourse with the victim, and that she had found her sister, naked and intoxicated, in Ortega's bed. Two other witnesses, including a police officer, testified that Ortega had disclosed to them that he had committed the act.

The defense presented Mary Ortega, petitioner's wife, who claimed that Ortega had been with her on that particular evening. She further testified that she and Ortega had sexual relations infrequently since the medication Ortega takes to control his epilepsy makes it difficult for him to achieve an erection. Ortega's personal physician verified that the medication might cause impotency, although Ortega had never complained to him about this problem. Another witness for Ortega, Kenneth Kohrs, said that the victim had told him and Ortega that she was seventeen years old.

After presenting these witnesses, the defense attorney, public defender Richard Brown, rested and the trial adjourned for lunch. Upon reconvening, the trial judge informed the jury that the closing argu-

ments would soon begin. However, when prosecuting counsel Schuwerk began to speak, the defendant interrupted the proceedings, indicating his desire to testify on his own behalf.[1]

During the prosecutor's closing remarks, Ortega interrupted for a second time. After excusing the jury, the judge directed Ortega to remain silent for the remainder of the trial. Ortega insisted that Mr. Brown had told him that the defense would continue after lunch. When the judge asked Brown if he had considered calling Ortega to the stand, the attorney stated that a joint decision had been made that Ortega would not testify. Ortega protested, stating that Brown was lying. The court denied Ortega's repeated requests to testify, and the closing arguments proceeded.

On appeal to the Illinois Appellate Court, Ortega argued that the court's refusal to let him testify was an abuse of discretion. The appellate court rejected this contention and affirmed his conviction, although it dismissed one count on other grounds. The Illinois Supreme Court denied Ortega leave to appeal and the Supreme Court of the United States denied his petition for a writ of certiorari. Having exhausted his state court remedies, Ortega filed a writ of habeas corpus, claiming that the court's denial of his testimony violated due process.

A magistrate conducted a limited evidentiary hearing to determine the merits of Ortega's claim. At the hearing, Ortega revealed the contents of the testimony he would have presented at his trial. He denied having had sexual intercourse with the victim, and noted that his epilepsy medication has made him impotent. He also stated that he had been with his wife on the evening of August 4, 1982. Ortega further declared that the victim's mother had attempted to extort $10,000 from him; if he refused to pay the money, she would tell the authorities that he had sex with her daughter.

Ortega admitted that his attorney had advised him not to testify since his prior murder convictions would be used to impeach him. Nevertheless, he stated that he was willing to testify since most of the people in the town, including several jurors, were already aware of his criminal past. He contends that he expressed his desire to testify to his attorney on at least three occasions.

Ortega also disclosed that Spanish is his native language and that he "thinks" in Spanish. Ortega claimed that he did not understand the meaning of the term "rested" when his attorney closed the defense, and that it was his belief that the presentation of evidence would continue after lunch. Lastly, Ortega testified that the police officer must have misunderstood him if he thought that Ortega had admitted having sex with the minor.

Ortega's trial counsel, Richard Brown, also testified at the hearing although his testimony was limited by Ortega's refusal to waive the attorney-client privilege. Brown hinted that he and Ortega had jointly decided that Ortega would not take the stand. Brown also stated that in his years of practice as a public defender, he had never refused a defendant who wished to exercise the right to testify.

The magistrate concluded that the testimony Ortega would have offered at trial was merely repetitive of other evidence which the defense had presented. Consequently, the trial court's denial of Ortega's request to testify did not violate due process.

## II.

### A. Right to Testify

Under common law, a defendant was deemed incompetent to testify. Even after this limitation was abolished by statute in

---

1. THE DEFENDANT: Your Honor, it's not over. I want to take the stand.
THE COURT: Just a minute.
THE DEFENDANT: I want to take the stand.
THE COURT: But the evidence is over with, Mr. Ortega.

THE DEFENDANT: That's not what he [Mr. Brown] told me before lunch, sir.
THE COURT: Go ahead, Mr. Schuwerk.

most jurisdictions, the ability to testify was not afforded full stature as a constitutional right. *See, e.g., Harris v. New York*, 401 U.S. 222, 225, 91 S.Ct. 643, 645, 28 L.Ed.2d 1 (1971) (right to testify termed a privilege). However, the right to testify on one's own behalf is now a recognized fundamental right. *United States v. Curtis*, 742 F.2d 1070, 1076 (7th Cir.1984), *cert. denied*, 475 U.S. 1064, 106 S.Ct. 1374, 89 L.Ed.2d 600. *See Faretta v. California*, 422 U.S. 806, 819–20 n. 15, 95 S.Ct. 2525, 2533 n. 15, 45 L.Ed.2d 562 (1975); *Alicea v. Gagnon*, 675 F.2d 913, 923 (7th Cir.1982). Indeed, it is clear that a defendant's right to testify is protected under the Fifth, Sixth, and Fourteenth Amendments. *Rock v. Arkansas*, — U.S. ——, 107 S.Ct. 2704, 2709–10, 97 L.Ed.2d 37 (1987).

■ Although the defendant's right to testify is fundamental, there are limitations on its exercise, such as the accommodation of legitimate interests in the trial process. *Rock*, 107 S.Ct. at 2711. For example, there is no constitutional right to commit perjury. *Nix v. Whiteside*, 475 U.S. 157, 173, 106 S.Ct. 988, 998, 89 L.Ed.2d 123 (1986); *Harris v. New York*, 401 U.S. 222, 225, 91 S.Ct. 643, 645, 28 L.Ed.2d 1 (1971); *Curtis*, 742 F.2d at 1076, *cert. denied*, 475 U.S. 1064, 106 S.Ct. 1374, 89 L.Ed.2d 600 (1986). The issue thus becomes whether the trial court erred in denying Ortega's request to testify, and if so, whether this error was harmless beyond a reasonable doubt.

■ The respondent maintains that no error occurred since Ortega had already waived his right to testify. The respondent concedes that the right to testify on one's own behalf is a personal right which cannot be waived by the defendant's counsel for tactical reasons without the defendant's consent. *Curtis*, 742 F.2d at 1076. If a defendant insists on testifying, no matter how unwise such a decision, the attorney must comply with the request. *Id.* The respondent argues that Ortega had agreed

not to take the stand as part of his trial strategy with his attorney, and that his assertion of his right to testify was made too late.

■ The record in this case is devoid of any colloquy between the judge and Ortega on the nature of the waiver, if any.[2] It is true that courts have no affirmative duty to determine whether a defendant's silence is the result of a knowing and voluntary decision not to testify. *See United States v. Systems Architects, Inc.*, 757 F.2d 373, 375 (1st Cir.), *cert. denied*, 474 U.S. 847, 106 S.Ct. 139, 88 L.Ed.2d 115 (1985). Nonetheless, trial courts must take steps to insure that important constitutional rights have been voluntarily and intelligently waived. *Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 1468–69, 25 L.Ed.2d 747 (1970).

The judge's unwillingness to allow Ortega's testimony is perhaps due to Ortega's prior conduct during the trial. The record reveals disruptive behavior on Ortega's behalf as well as hostility between Ortega and the prosecutor, a situation which made the proceedings more difficult. We are sympathetic to the problems which contumacious parties can create in a courtroom. *See, e.g., Illinois v. Allen*, 397 U.S. 337, 341, 90 S.Ct. 1057, 1059–60, 25 L.Ed.2d 353 (1970). Nonetheless, courts should carefully consider a defendant's request to exercise his or her constitutional rights, particularly the right to testify. *United States v. Walker*, 772 F.2d 1172, 1179 (5th Cir.1985) (the defendant's testimony is of prime importance in a criminal trial). A contentious defendant has no fewer rights than a sympathetic one. *Cf. United States v. Chaussee*, 536 F.2d 637, 641 (7th Cir.1976).

■ In this case, the magistrate made no finding as to whether Ortega had, in fact, waived his right to testify. *United States v. Johnson*, 820 F.2d 1065, 1074 (9th Cir. 1987) (issue of waiver is a question of fact).[3] It is also uncertain whether Orte-

---

**2.** Although the judge questioned Ortega's counsel to determine what advice he had given his client on taking the stand, the inquiry should have been directed to Ortega. The right to testi-

fy is a personal right which cannot be waived by counsel without a defendant's consent.

**3.** Indeed, such a factual determination would be difficult to reach in this case since the testimony

ga's request to testify was untimely made.[4]

A reviewing court must "indulge every presumption against waiver of fundamental constitutional rights." *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). Assuming that the trial court improperly denied Ortega's request to testify, we must nonetheless affirm the magistrate's denial of Ortega's writ, since, as discussed below, we find the error harmless beyond a reasonable doubt.

### B. Harmless Error Beyond a Reasonable Doubt

A defendant is entitled to a fair trial, not a perfect one, *Delaware v. Van Arsdall*, 475 U.S. 673, 681, 106 S.Ct. 1431, 1436–37, 89 L.Ed.2d 674 (1986), and a federal constitutional error is not automatically reversible. *Id.* Rather, as recognized in *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967), the context of the case will indicate whether the error was harmless beyond a reasonable doubt.

This court has previously ruled that the *Chapman* standard applies when a petitioner has been denied the right to testify. *Alicea v. Gagnon*, 675 F.2d 913, 925 (7th Cir.1982) (per curiam) (harmless error found where defendant was precluded from giving alibi testimony due to violation of Wisconsin notice of alibi statute). *See Wright v. Estelle*, 572 F.2d 1071 (5th Cir. 1978) (en banc). *See also Crane v. Kentucky*, 476 U.S. 683, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986) (harmless error analysis applicable to trial court's exclusion of defendant's evidence regarding the circumstances of his confession). *But see Curtis,*

742 F.2d at 1076 (finding persuasive Judge Godbold's dissent in *Wright*). Thus, although we may view the trial judge's refusal to reopen the evidence to include Ortega's testimony as an abuse of discretion, *e.g., United States v. Walker*, 772 F.2d 1172, 1185 (5th Cir.1985), the error's constitutional effect must be examined in light of the *Chapman* standard.

The *Van Arsdall* decision[5] sets the framework for determining whether an error is harmless beyond a reasonable doubt under *Chapman:*

> [The] factors [to consider] include the importance of the witness' testimony to the ... case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points ..., and of course, the overall strength of the ... case.

*Van Arsdall*, 475 U.S. at 684, 106 S.Ct. at 1438. These factors are particularly useful for determining the effect of the court's decision in refusing to hear a defendant's testimony.

We find that the absence of Ortega's testimony did not deprive him of a fair trial since the error was harmless under the *Chapman* standard. The testimony which Ortega would have proffered merely bolsters evidence previously given by other witnesses. For example, Ortega's wife had already given the alibi testimony. In addition, both she and the physician had explained the deleterious effect the epilepsy medication had on Ortega's sexual capacity.

---

by Ortega's trial counsel at the evidentiary hearing was hampered by Ortega's invocation of the attorney-client privilege.

Since we have no factual finding as to whether a valid waiver was given in this case, we need not determine whether a defendant's waiver of such right would be irrevocable.

4. Ortega acknowledges that his request was made after the close of the evidence. He claims that he did not understand the import of the term "rested", and could not have raised his objection earlier. He argues that his request, if granted, would not have prejudiced the prosecution nor interfered with the orderly flow of the

trial. *See, e.g., United States v. Walker,* 772 F.2d 1172, 1177 (5th Cir.1985). Indeed, in this case, the defendant's objection could not have been more timely made.

5. The respondent contends that reliance on *Van Arsdall* is misplaced since the *Van Arsdall* case involved a court's denial of due process in limiting a defendant's ability to cross-examine witnesses, a violation of the Confrontation Clause under the Sixth Amendment. This distinction is not critical, however, to our use of the *Van Arsdall* factors for applying the *Chapman* error standard.

The only new evidence which Ortega's testimony would have furnished concerns his "admission" to the police officer (which Ortega characterizes as a misunderstanding) and information relating to the extortion plot by the victim's mother. We are satisfied that these statements would not have influenced the result of the case. Ortega's explanation of his conversation with the police officer does not contradict the testimony of two other witnesses who spoke of Ortega's admissions to them. Nor is it apparent that Ortega's testimony on the alleged extortion plot would have been admitted at the trial (hearsay) or, if admitted, would have exculpated him.

■ Although the evidence in this habeas corpus case compels a finding of harmless error, we strongly emphasize that a defendant's request to testify should never be summarily dismissed by a trial court. Indeed, were this issue before us on direct review of a federal criminal case another outcome might obtain. When waiver of such an important right is at issue, a trial court should carefully ascertain through a methodical inquiry whether this right has been voluntarily and intelligently forfeited. The trial court in this case erred in failing to determine whether or not Ortega had voluntarily and intelligently waived his right to testify and improperly failed to permit the full exercise of this right. In the habeas context, however, our review is limited to whether this error undermined the fundamental fairness of the trial. On the facts and procedural posture of this appeal we are forced to conclude that the error was harmless. Accordingly, we affirm the denial of petitioner's writ of habeas corpus.

IT IS SO ORDERED.