Peter GALOWSKI, Plaintiff–Appellant,

v.

James MURPHY, Superintendent, Columbia Correctional Institution, Defendant–Appellee.

No. 88–1370.

United States Court of Appeals, Seventh Circuit.

Argued April 18, 1989.

Decided Dec. 14, 1989.

Peter Galowski, pro se.

Allen E. Shoenberger, Diana L. Pauli (argued), Loyola Law School, Chicago, Ill., for plaintiff-appellant.

Donald J. Hanaway, Atty. Gen., David J. Becker, Asst. Atty. Gen., Wisconsin Dept. of Justice, Madison, Daniel J. O'Brien, for defendant-appellee.

Before COFFEY, EASTERBROOK, and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

In January 1978, a Wisconsin state-court jury convicted petitioner Peter Galowski of two counts of first degree murder. On direct appeal the Wisconsin Court of Appeals affirmed the judgment of conviction, *see Galowski v. State,* 99 Wis.2d 805, 300 N.W.2d 84 (Ct.App.1980), and the Wisconsin Supreme Court denied Mr. Galowski's petition for review. *See Galowski v. State,* 99 Wis.2d 812, 306 N.W.2d 252 (1981). The Wisconsin courts also denied Mr. Galowski's petition for post-conviction relief.[1] Mr. Galowski is serving two consecutive life sentences in the Columbia Correctional Institution in Portage, Wisconsin.

In December 1987, Mr. Galowski filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the United States District Court for the Western District of Wisconsin. The district court denied habeas. relief. *Galowski v. Murphy,* No. 87–C–946–S (W.D.Wis. Feb. 17, 1988) [hereinafter USDC Mem. op.]. Mr. Galowski now appeals and raises two issues for our consideration: whether the petitioner was denied effective assistance of counsel at trial and whether the petitioner's trial attorney prevented Mr. Galowski from exercising his constitutional right to testify.[2] We conclude that the petitioner was not denied effective assistance of counsel, and that the trial attorney did not unilaterally waive the petitioner's right to testify.[3] The

judgment of the district court denying the petition for a writ of habeas corpus is affirmed.

## I

## BACKGROUND

Mr. Galowski was charged with murdering, during the early morning hours of July 29, 1977, Francine Flowerette and David Dethardt. After being charged with the murders, Mr. Galowski declined appointed counsel and instead hired as his attorney Mary Sfasciotti, a former Assistant United States Attorney with over four years of trial experience.

### A. The State Criminal Proceeding

#### 1. The State Case

John Harrington was the principal state witness and provided a substantial part of the state's case.[4] According to Harrington's testimony, he was first introduced to Peter Galowski by Richard Feltz in May 1977 when Feltz took him to Mr. Galowski's to purchase some marijuana. On the evening of July 28, 1977, Harrington met Wasyl ("Billy") Deneka and Mr. Galowski for a drink at an establishment called the Corner Bar. During their conversation, Mr. Galowski stated that he wanted to go to Mr. Dethardt's trailer to collect $235 that Mr. Dethardt owed him. Harrington and Mr. Galowski left the bar around 1:40 a.m. and went to Mr. Galowski's house. Mr. Galowski entered his house and, when

---

1. In October 1981, appointed counsel filed a motion for post-conviction relief pursuant to Wis.Stat. § 974.06. After three years of inaction by appointed counsel, Mr. Galowski proceeded *pro se* and amended the motion on March 6, 1985. On June 14, 1985, this motion was denied. The Wisconsin Court of Appeals reversed the lower court and, on October 25, 1985, ordered a post-conviction hearing. This hearing was held on May 1, 1986 before Judge Conway of the Portage County Circuit Court, who denied the post-conviction relief. *State v. Galowski,* No. 7–10 (Portage Cir.Ct. July 11, 1986). This decision was affirmed on July 23, 1987 by the Wisconsin Court of Appeals. *State v. Galowski,* 140 Wis.2d 866, 412 N.W.2d 901 (Ct.App.1987).

2. Petitioner raised two other grounds for habeas relief before the district court: that the trial

court committed error by not giving an accomplice instruction and that his sentence to two consecutive life terms was illegal. Judge Shabaz decided that state law supported both actions and did not violate Mr. Galowski's constitutional rights. USDC Mem. op. at 4–5. These claims have not been renewed upon this appeal.

3. For our disposition of petitioner's second claim, *see infra* note 12.

4. Harrington previously had been implicated by some of the physical evidence as a suspect in the murders. He testified against Mr. Galowski as part of an agreement with the state that, in exchange for his testimony, the state would not prosecute him for the murders. R.2 at Sec. A (Brief of Defendant–Appellant in Court of Appeals at Ex.C).

he returned to the car, he was wearing a black leather jacket. Harrington had become tired while waiting for the petitioner and had decided that he did not want to go to Mr. Dethardt's trailer. However, when he returned, he announced he was going to drive and jumped into the driver's seat. The two men arrived at the trailer park at approximately 2:30 a.m. and went into the Dethardt/Flowerette trailer home. Once in the living room, Mr. Galowski asked Mr. Dethardt if he had the money, and Mr. Dethardt responded by laughing. Harrington testified that he then heard a shot and saw a flash of light across the living room; a few seconds later he heard a scream coming from Ms. Flowerette's bedroom followed by another shot and a flash of light.

The state also called as a witness Billy Deneka. He testified that he was with Harrington and Mr. Galowski at the bar, and that Harrington became agitated and began saying that he wanted to "waste" David Dethardt. Some time later Deneka and Mr. Galowski left the bar and went to Mr. Galowski's house. A short while later, Deneka heard a car pull up to the house, and Mr. Galowski left the house. Mr. Galowski did not return for at least thirty minutes. When he returned, Mr. Galowski appeared a "little mad or shooken [sic] up, nervous." St.R. 119A at 67.[5]

### 2. The Defense Case

The defense produced Ray Stewart, a friend of Mr. Dethardt's, who testified that he was with the decedent a week and a half before the murders. Stewart testified to conversing with Mr. Dethardt, who stated that he knew he was going to be killed because he was involved in a gun transaction and had "ripped a guy off" for $1000. St.R.121 at 111. Stewart further testified that he and Mr. Dethardt went out drinking because, in Mr. Dethardt's words, it

was his "[l]ast fling, last spree." *Id.* The defense also produced a Wisconsin Justice Department investigator to testify about statements of the trailer court residents to police, and Harrington's former supervisor to impeach Harrington's testimony regarding his employment.

Defense counsel also impeached Harrington with inconsistencies in his preliminary hearing testimony. At trial, Harrington testified that on the night of the murders he threatened Claus Anderson, one of his drug customers; at the preliminary hearing he had denied any threat. Further, defense counsel brought out that Harrington accompanied Mr. Galowski with the intention of collecting money that the murder victims owed him; Harrington had denied at the preliminary hearing such an intention. Defense counsel concentrated on one other inconsistency: at the preliminary trial, Harrington testified that he heard the gunshots and saw flashes, but never saw the gun; at trial, he testified that he did see a gun in Mr. Galowski's hand as the shots were fired.

### B. The State Post–Conviction Proceedings

#### 1. Mr. Galowski's Alibi Defense

In October 1981, Mr. Galowski moved for post-conviction relief in state court pursuant to Wis.Stat. § 974.06. On May 1, 1986, Judge Conway of the Portage County Circuit Court held a hearing on this matter.[6] Mr. Galowski testified that he had presented to his trial attorney an alibi defense. He testified that, on the evening of the murder, he went to a drive-in movie with his girlfriend Julie Wypych and his friend Billy Deneka. They left the movie around 12:30 a.m. and decided to go for a drink. On their way, Ms. Wypych's car began to malfunction and they decided to go instead

---

5. At the request of Mr. Galowski's counsel on appeal, copies of various records from the state-court proceedings were forwarded to the district court under cover of a letter dated November 2, 1988. R.15. All of these records were labeled by the district court as being attachments to R.15. These records also still bear the numbers assigned to them by the state courts. For ease

of reference, they will be referred to by their state record number: e.g., St.R.119A.

6. Mr. Galowski asserts that the five-year delay in hearing his post-conviction motion was due in part to three years of "non[-]action by appointed appellate counsel." Appellant's Br. at 2. *See supra* n. 1.

to Mr. Galowski's home. When they .arrived, Deneka and Ms. Wypych went into the house and the petitioner stayed outside to examine the car. Mr. Galowski was outside for about ten minutes when he was called inside to answer a telephone call. The caller was a friend of Mr. Galowski's who told him that Mr. Galowski's old roommate was in town. Ms. Wypych declined Mr. Galowski's invitation to go into town and meet his friend so Deneka went with him instead.

While barhopping, Deneka and Mr. Galowski met Harrington and the three of them went to the Corner Bar. Around 2:00 a.m. the petitioner and Deneka returned to Mr. Galowski's house. Mr. Galowski testified that he had another beer, had sexual intercourse with his girlfriend, and then returned to the living room where Deneka was watching television. Around 2:30 a.m., Mr. Galowski went outside to work on Ms. Wypych's car. While he was working on the car, Mr. Galowski's neighbors, later identified as Gerald and Kathy Hanson,[7] drove into the driveway and the three exchanged waves. The petitioner testified that, after fixing the car, he returned to the house, cleaned up, had another beer,

exchanged a few words with Deneka, and then went to bed around 3:00 a.m.

The petitioner also testified that he informed Ms. Sfasciotti that the black leather jacket he had once owned was ruined in a motorcycle accident. He testified that he explained to Ms. Sfasciotti the facts underlying the accident. He claims he also told her that both the accident and the fact that the leather jacket was ruined could be verified by a police report and by his friends, Gary Johnson and Steve Betro.

As part of his post-conviction case, Mr. Galowski also testified that he had asked his attorney to let him testify, but was told that, if he testified, his prior burglary conviction would become known to the jury.[8] Mr. Galowski testified that Ms. Sfasciotti did not allow him to make the decision nor did she inform him that it was his constitutional right to make the decision.

### 2. The Findings of the Portage County Circuit Court

The basis for Mr. Galowski's claim to post-conviction relief was that he was denied effective assistance of trial counsel. He alleged seven specific deficiencies in

7. Mr. Galowski told Ms. Sfasciotti that he did not know the names of his neighbors. On Ms. Sfasciotti's list of people to contact a note was made that "[y]oung couple lives next door on Francis Street." R.2 at Sec. A (Brief of Defendant–Appellant in Court of Appeals at Ex. A); *see* St.R.192 at 176.

8. As explained by Ms. Sfasciotti, the revelation of the burglary conviction may have had a more serious implication than suggested by Mr. Galowski. In response to Mr. Galowski's questions, Ms. Sfasciotti testified before the May 1, 1986 hearing as follows:

Q. Mary, what was your reason for not putting the defendant on the stand?
A. There were two reasons. The first reason, and the most important one of the two, was that admitted into evidence was a firearm transaction record showing that [Mr. Galowski] had purchased a 38 caliber weapon which was a weapon that was variously identified as being the murder weapon, which was never recovered, but [he] had purchased this weapon prior to the murders. On the firearm transaction record, there were a series of questions. One question was, were you convicted or have you been convicted of a felony, and [the petitioner] answered no to that,

when in fact [he] had been. [Mr. Galowski was] on probation for a felony conviction of burglary in Illinois. And because of the circumstances, the lie that [he] told on the form to get the gun, and the rightfulness of the cross examination of any prosecutor to ask [him] whether that was true or not true, and indeed, [wasn't he] a convicted felon at the time [he] purchased this gun, and on and on and on, the adverse inference was that [he] lied to buy a gun, and that therefore, the jury would link up [his] lying over who had done the murders, and would probably not believe [his] alibi defense. That, I thought, would devastate [him], not to mention other things such as Billy [Deneka's] saying that instead of staying home, [he] left the home about the same time as the murders were alleged to be committed. You add into that Harrington's testimony that [Mr. Galowski was] the one that pulled the trigger in the trailer, then you have all of this cumulative evidence about how [he] and Harrington were drug dealers, I figured that whatever alibi defense was plausible and tenable should come from somebody else's mouth other than [Mr. Galowski's] because [he] would have damaged [his] credibility beyond anything in front of the jury. St.R.192 at 189–90.

Ms. Sfasciotti's performance. The deficiencies that are pertinent to this action are as follows:

First, that the defense counsel failed to interview alibi witnesses, [neighbors] Gerald and Kathy Hanson. Second, the defense counsel failed to interview the other witnesses, Steve Betro and Gary Johnson ... concerning the black leather jacket.... Fourth, that the defendant was not allowed to take the stand by his counsel, although he wished to do so, and that counsel did not inform the defendant of his constitutional right to take the stand.... [And s]ixth, that defense counsel failed to move for a mistrial because Harrington perjured himself at the preliminary hearing.

*State v. Galowski*, No. 7–10, Mem. dec. at 2 (Portage Cir.Ct. July 11, 1986) [hereinafter Portage Mem. dec.].[9]

The Portage County Circuit Court heard the petitioner's motions for a new trial on May 1, 1986. At the hearing, the trial court heard testimony not only from Mr. Galowski, but also from Gerald and Kathy Hanson, Betro, Johnson, and Ms. Sfasciotti. Applying the test found in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), the court examined the evidence to determine (1) if the attorney's performance was deficient, and (2) if the deficiency prejudiced the defendant. Regarding the issues that Mr. Galowski now raises on appeal, the court made the following findings of fact and conclusions of law:

1. That defendant's trial attorney failed to interview Gerald or Kathy Hanson prior to the trial in this action; that this failure was not prejudicial to the defendant.

2. That defendant's trial attorney failed to interview Steve Betro or Gary Johnson; that this failure was not prejudicial to the defendant.

. . . .

4. That defendant's trial attorney did inform him of his right to testify in his own behalf and did review the advantages and disadvantages of such testimony on several occasions; that the defendant with the assistance of his trial counsel made the decision not to testify; that if the defendant had testified he would have harmed his case more than it would have helped and this defendant was, in any event, not prejudiced by his failure to testify.

. . . .

6. That the defense attorney's failure to move for a mistrial after an alleged breach by Harrington of an immunity was not deficient; that such an alleged breach would go to credibility which was a jury issue; that the trial court would not have granted a mistrial on that basis.

. . . .

8. That taking the said errors alleged by the defendant together as a group there is no reasonable probability that the result of the proceedings was affected by them.

R.2 at Sec. A (Findings and Order dated July 21, 1986); *see also* Portage Mem. dec. at 4–12.

### 3. Decision of the Wisconsin Court of Appeals

Mr. Galowski appealed the order denying his motion for post-conviction relief to the Wisconsin Court of Appeals. That court agreed that Ms. Sfasciotti was not ineffective in her dealing with the defendant's right to testify and affirmed the decision of the Portage County Circuit Court. *State v. Galowski*, No. 86–1417, Mem. op. at 8 (Wis. Ct.App. July 23, 1987) [140 Wis.2d 866, 412 N.W.2d 901 (table) ] [hereinafter Wis.Mem. op.]. Looking at all the evidence, the court of appeals concluded that the trial court

---

**9.** Mr. Galowski also alleged three other deficiencies in the state trial. First, he claimed that his counsel failed to interview an eyewitness who lived near the murder scene and would have testified to seeing *three* individuals leave the trailer. Second, he alleged deficiency in his counsel's failure to request a mistrial based on the state's threatening to charge Harrington with murder and thus compelling his cooperation. Third, he charged that, during the direct examination of his girlfriend, his counsel "opened the door" to evidence of a previous violent incident when counsel asked the girlfriend if Mr. Galowski ever had become violent. Since the petitioner did not renew these claims on this appeal, we shall not discuss their merits.

was not clearly erroneous in finding that defense counsel had informed the defendant of his right to testify. The court independently determined that counsel's advice was a reasonable professional decision that did not fall below the objective standard of reasonableness and " 'might be considered sound trial strategy.' " *Id.* at 9 (quoting *Strickland v. Washington,* 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984)).

The court of appeals agreed with the trial court that Ms. Sfasciotti's representation of Mr. Galowski was deficient because she failed to interview the Hansons. The Hansons were on her witness list and Ms. Sfasciotti offered no explanation for omitting to interview them. But the Hansons testified at the May 1, 1986 hearing before Judge Conway that they would not have recalled a month afterward whether they had seen the defendant on the night of the murders. The court of appeals concluded that the Hansons could not have been interviewed by Ms. Sfasciotti until a month after the murders [10] and thus, in light of their testimony, the defendant did not meet his burden of proving that the Hansons would have been effective alibi witnesses. The court "[could not] conclude that the prospect of conviction would have been substantially less had the Hansons been interviewed." *Id.* at 16.

The court further found that neither Gary Johnson nor Steve Betro was contacted by Ms. Sfasciotti, although both were on her list of people to interview. The court concluded that "[b]ecause counsel could not locate Betro, she was not deficient in failing to interview him." *Id.* at 7. With respect to Johnson, the court found that Ms. Sfasciotti's representation was deficient, *id.,* but not prejudicial. *Id.* at 17. The court of appeals, quoting the trial court, concluded that there was no prejudice because the testimony that Johnson would have provided would have been " 'an effort to prove a negative; that a jacket was ripped in a motorcycle accident, and was not seen thereafter, and therefore, the defendant could not have been wearing it on the night of the murders, and therefore, he is not the murderer.' " *Id.* at 16. The court of appeals concluded that, because Johnson could not say what happened to Mr. Galowski's jacket after the accident, the omission did not contribute to the guilty verdict, and thus the prospect of conviction would not have been substantially less had Johnson testified.

Finally, the court of appeals determined that it was not ineffective assistance of counsel for Ms. Sfasciotti to refrain from moving for a mistrial on the basis of Harrington's perjured testimony at the preliminary hearing. The trial judge believed Harrington's testimony, Harrington was fully cross-examined before the jury regarding his inconsistencies, and consequently the defendant was not deprived of due process of law.

Mr. Galowski petitioned for further review in the Wisconsin Supreme Court. On November 10, 1987, the Wisconsin Supreme Court denied review.[11]

---

10. Although Ms. Sfasciotti testified at the postconviction hearing that she was not sure of the date that she was retained by Mr. Galowski, St.R.192 at 164, the record reveals that Mr. Galowski was being represented by a public defender as late as August 18, 1977—three weeks after the murders.

11. Mr. Galowski did not include in his petition to the Wisconsin Supreme Court all of the grounds he subsequently asserted before the district court. Of the claims that he made on appeal to this court, only the issue of ineffective assistance of counsel regarding the failure to call the Hansons as witnesses was actually before the Supreme Court of Wisconsin. This is a procedural defect, because a habeas petitioner generally must litigate his claim in the state courts before bringing the claim in a federal court. *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982).

Nevertheless, the state did not raise an objection in the district court regarding this procedural defect. In such a situation, we may decide whether comity and judicial efficiency make it appropriate to consider the merits. *Washington v. Lane,* 840 F.2d 443, 446 n. 2 (7th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 157, 102 L.Ed.2d 128 (1988); *see also Henderson v. Thieret,* 859 F.2d 492, 497 (7th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 1648, 104

## II

## ANALYSIS

Mr. Galowski alleges that his attorney, Ms. Sfasciotti, was so lacking in her representation of him at trial that his sixth amendment right to " 'the effective assistance of counsel' " was violated. *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984) (quoting *McMann v. Richardson,* 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 1449 n. 14, 25 L.Ed.2d 763 (1970)). Specifically, Mr. Galowski alleges that Ms. Sfasciotti: (1) failed to inform him of his right to testify; (2) failed to interview Gerald and Kathy Hanson; (3) failed to interview Steve Betro and Gary Johnson; and (4) failed to request a mistrial based on Harrington's perjured preliminary hearing testimony.

" '[T]he purpose of the effective assistance guarantee of the Sixth Amendment is not to improve the quality of legal representation, although that is a goal of considerable importance to the legal system. The purpose is simply to ensure that criminal defendants receive a fair trial.' " *Kubat v. Thieret,* 867 F.2d 351, 359 (7th Cir.) (quoting *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065), *cert. denied,* —— U.S. ——, 110 S.Ct. 206, 107 L.Ed.2d 159 (1989). " 'The essence of an ineffective assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect.' " *Lewis v. Lane,* 832 F.2d 1446, 1452 (7th Cir.1987) (quoting *Kimmelman v. Morrison,* 477 U.S. 365, 374, 106 S.Ct. 2574, 2582, 91 L.Ed.2d 305 (1986)), *cert. denied,* —— U.S. ——, 109 S.Ct. 83, 102 L.Ed.2d 59 (1988).

Under *Strickland,* "[t]o show that he received ineffective assistance of counsel, a convicted defendant must demonstrate that: (1) 'counsel's representation fell below an objective standard of reasonableness' and (2) 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would

have been different.' " *Santos v. Kolb,* 880 F.2d 941, 943 (7th Cir.1989) (quoting *Strickland,* 466 U.S. at 687–88, 694, 104 S.Ct. at 2064–65, 2068); *see United States v. Olson,* 846 F.2d 1103, 1108 (7th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 131, 102 L.Ed.2d 104 (1988). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *United States v. Adamo,* 882 F.2d 1218, 1226 (7th Cir.1989). "To establish a claim of ineffective assistance of counsel, the defendant must satisfy the two-pronged test outlined" in *Strickland. Id.; see also Lewis,* 832 F.2d at 1452 ("[D]efendant, not the State, bears the burden of proving both incompetence and prejudice."); *Shepard v. Lane,* 818 F.2d 615, 619 (7th Cir.) ("The petitioner has the burden of establishing both components of the *Strickland* inquiry."), *cert. denied,* 484 U.S. 929, 108 S.Ct. 296, 98 L.Ed.2d 256 (1987).

In a federal habeas challenge to a state conviction, "a state court conclusion that counsel rendered effective assistance is not a finding of fact binding on the federal court to the extent stated by 28 U.S.C. § 2254(d)." *Strickland,* 466 U.S. at 698, 104 S.Ct. at 2070. " '[I]ssues of fact' refers 'to what are termed basic, primary, or historical facts: facts "in the sense of a recital of external events and the credibility of their narrators...." ' " *Cuyler v. Sullivan,* 446 U.S. 335, 342, 100 S.Ct. 1708, 1715, 64 L.Ed.2d 333 (1980) (quoting *Townsend v. Sain,* 372 U.S. 293, 309 n. 6, 83 S.Ct. 745, 755 n. 6, 9 L.Ed.2d 770 (1963) (quoting *Brown v. Allen,* 344 U.S. 443, 506, 73 S.Ct. 397, 445, 97 L.Ed. 469 (1953) (opinion of Frankfurter, J.))). "The state court finds the underlying facts, of the 'who did what to whom, when, where and why' variety." *Weidner v. Thieret,* 866 F.2d 958, 961 (7th Cir.1989). However, "[a]lthough state court findings of fact made in the course of deciding an ineffectiveness claim are subject to the deference requirement of § 2254(d) ... the performance and prejudice components of the ineffectiveness in-

L.Ed.2d 163 (1989); *cf. Granberry v. Greer,* 481 U.S. 129, 134–35, 107 S.Ct. 1671, 1675–76, 95 L.Ed.2d 119 (1987). Since these issues now

have been fully briefed by both parties, we shall proceed to rule on the merits of all issues before this court.

quiry are mixed questions of law and fact." *Strickland,* 466 U.S. at 698, 104 S.Ct. at 2070.

## A. *Counsel's Advice to Petitioner on Testifying*

It cannot be doubted that Mr. Galowski had a right to testify in his own defense. *Rock v. Arkansas,* 483 U.S. 44, 49, 107 S.Ct. 2704, 2708, 97 L.Ed.2d 37 (1987); *Nix v. Whiteside,* 475 U.S. 157, 164, 106 S.Ct. 988, 993, 89 L.Ed.2d 123 (1986); *In re Oliver,* 333 U.S. 257, 273, 68 S.Ct. 499, 507, 92 L.Ed. 682 (1948); *Ortega v. O'Leary,* 843 F.2d 258, 261 (7th Cir.) (right protected under the fifth, sixth, and fourteenth amendments), *cert. denied,* —— U.S. ——, 109 S.Ct. 110, 102 L.Ed.2d 85 (1988). It is also admitted that the right to testify is a personal right that belongs to the accused and may be waived only by the accused. *Ortega,* 843 F.2d at 261; *see also Wainwright v. Sykes,* 433 U.S. 72, 93 n. 1, 97 S.Ct. 2497, 2510 n. 1, 53 L.Ed.2d 594 (1977) (Burger, C.J., concurring) ("Only such basic decisions as whether to plead guilty, waive a jury, or testify in one's own behalf are ultimately for the accused to make."). The attorney may not, as a tactical decision, forbid the defendant from testifying, but instead may only advise the defendant as to what the best approach would be.

The petitioner alleges that Ms. Sfasciotti unilaterally waived his right to testify. The issue of waiver is a question of fact. *Ortega,* 843 F.2d at 261; *United States v. Johnson,* 820 F.2d 1065, 1074 (9th Cir. 1987). In contrast to the facts in *Ortega,* where a magistrate made no finding as to whether the defendant had in fact waived his right to testify, 843 F.2d at 261, the state trial court in this case, after the post-conviction hearing, made a factual finding that the petitioner (with the assistance of his trial counsel) made the decision not to testify. At the post-conviction hearing, Ms. Sfasciotti testified that she and her client discussed several times whether the defen-

dant should take the stand, and that it was their mutual decision not to put the defendant on the stand. Ms. Sfasciotti also testified that it was her practice to let her client testify if the client so desired. Furthermore, on the eighth day of trial, in the presence of Mr. Galowski, defense counsel informed the court that Mr. Galowski would not testify.

Factual determinations of the state court are taken by this court as presumptively correct for purposes of habeas review under 28 U.S.C. § 2254. *Sumner v. Mata,* 449 U.S. 539, 547, 101 S.Ct. 764, 769, 66 L.Ed.2d 722 (1981); *Madyun v. Young,* 852 F.2d 1029, 1032 n. 1 (7th Cir.1988). This deference applies to factual findings of both trial and appellate courts. *Dooley v. Duckworth,* 832 F.2d 445, 448 n. 3 (7th Cir.1987), *cert. denied,* 485 U.S. 967, 108 S.Ct. 1239, 99 L.Ed.2d 438 (1988). After the post-conviction hearing, the court found that, having observed Ms. Sfasciotti's demeanor, she was a credible witness. The Wisconsin Court of Appeals concluded that the trial court's finding—that counsel informed the defendant of his rights—was not clearly erroneous. Based on the evidence presented to the trial court, we cannot say that the court's decision was not fairly supported by the record on the whole. We therefore accept the trial court's factual determination:

> That the defendant's trial attorney did inform him of his right to testify in his own behalf and did review the advantages and disadvantages of such testimony on several occasions; that the defendant with the assistance of counsel made the decision not to testify; that if the defendant had testified he would have harmed his case more than it would have helped and thus defendant was, in any event, not prejudiced by his failure not to testify.

R.2 at Sec. A.

■ Accepting these findings of fact,[12] it is impossible to conclude that Mr. Galowski

---

**12.** For the first time on this appeal, petitioner asserts as an independent constitutional violation that he was prevented from testifying. This issue was not presented in this fashion during

the state appeals or in the district court. The state argues that, following *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), this claim cannot be heard now on appeal be-

has met the first prong of the *Strickland* test: that his counsel's representation with respect to his right to testify was deficient. Since this prong is not satisfied, there is no need to determine if the representation caused him prejudice.

## B. *Uncalled Witnesses—The Hansons*

The petitioner alleges that Ms. Sfasciotti's representation was ineffective because she failed to interview potential alibi witnesses, Gerald and Kathy Hanson. He claims that the Hansons would have testified that he was in his driveway working on an automobile between 2:30 and 3:00 a.m. on July 29, 1977—the time during which the murders were committed.

A document entitled "People to Interview" revealed that the Hansons were on a list of witnesses to be contacted. But, at the post-conviction evidentiary hearing, the Hansons testified that they never had been interviewed by Ms. Sfasciotti or her investigator. Although Ms. Sfasciotti testified that she was unable to remember, the trial court found that Ms. Sfasciotti had not interviewed the Hansons.

The court further found that when the Hansons testified at the evidentiary hearing, they "had no recollection whatsoever of seeing the defendant working on his car on the night of the murders." Portage Mem. dec. at 5. Furthermore, the Hansons "stated that they would probably have had no recollection a month or two after the event." *Id.*[13] The murders occurred in the early morning hours of July 29, 1977, Ms. Sfasciotti was retained in late August 1977, and her investigator turned in his report (including witness interviews) on September 21, 1977. Wis.Mem. op. at 6.

From the testimony and these facts, the trial court found that Ms. Sfasciotti should have interviewed the Hansons. Portage Mem. dec. at 5. The Wisconsin Court of Appeals and the district court agreed that trial counsel had been deficient. *See* Wis. Mem. op. at 6 ("[C]ounsel's representation was deficient because she failed to interview the Hansons."); USDC Mem. op. at 4 ("[T]rial counsel's investigation of the case may not have been as thorough as it should have been."). We agree that Ms. Sfasciotti was deficient in failing to interview the Hansons. The Hansons would have been disinterested witnesses who purportedly could have corroborated Mr. Galowski's alibi that he was fixing a car at the time of the murders. Their testimony would not have been cumulative and could have accounted for Mr. Galowski's whereabouts at the time of the murders.

■ Despite this failure to interview the Hansons, there was no constitutional viola-

cause the petitioner has not exhausted his state remedies. Petitioner counters that the argument had been fairly presented in the state courts, and thus this court can examine the issue. *See Anderson v. Harless,* 459 U.S. 4, 6, 103 S.Ct. 276, 277, 74 L.Ed.2d 3 (1982); *Wallace v. Duckworth,* 778 F.2d 1215, 1223 (7th Cir. 1985); *United States ex rel. Sullivan v. Fairman,* 731 F.2d 450, 453 (7th Cir.1984); *United States ex rel. Nance v. Fairman,* 707 F.2d 936, 940 (7th Cir.1983).

In light of the state court's finding of fact that Ms. Sfasciotti *did* consult with the petitioner regarding his right to testify, it is unnecessary for us to examine further whether we can entertain petitioner's newly-framed argument on this appeal. Since Mr. Galowski was given the opportunity to testify, his claim to a constitutional violation is without merit.

**13.** Gerald Hanson's testimony revealed the following:

Q. Okay, do you recall what you did, or where you were on July 29th in the early morning hours?

A. No, I couldn't say. I can't say that. I couldn't say where I was.

Q. Can you tell this Court that you couldn't say now because it[']s a loss of memory, due to passing of time?

A. Probably a loss of memory. Even if it was a month or so after that, I wouldn't be able to say where I particularly was on that particular day.

St. R.192 at 37.

Kathy Hanson testified before the hearing as follows:

Q. Do you recall where you were and what you did on July 28th and early morning hours of July 29th of 1977.

A. No, no, I don't.

Q. Is it due to—is it due to loss of memory due to the time that has gone by?

A. No, not—not really. I don't think so. It's hard to say for sure what you did even last week, let alone, you know, that long ago.

St. R.192 at 45–46.

tion unless the petitioner carries his burden of proving the second prong of *Strickland:* that Mr. Galowski was prejudiced by Ms. Sfasciotti's deficiency. *See United States ex rel. Cross v. DeRobertis*, 811 F.2d 1008, 1013 (7th Cir.1987) (defendant has burden to establish both prongs of *Strickland*). Although the Hansons were not interviewed immediately after the murders, they later testified that even a month or so after the murders they would have been unable to say where they were on the night of the murders. As the Wisconsin Court of Appeals found, Ms. Sfasciotti was retained almost a month after the murders. Although the case investigation was completed on September 21, 1977—almost two months following the murders—Mr. Galowski does not allege that Ms. Sfasciotti's investigation took too long. By the Hansons' own admissions, even if Ms. Sfasciotti had contacted them in September 1977, they would have been unable to say definitely that Mr. Galowski was fixing a car in his driveway. As such, the Hansons would not have been effective alibi witnesses. Therefore, the petitioner has not met his burden of proving that "there is a reasonable probability that, but for counsel's unprofessional error[ ] [in failing to contact the Hansons,] the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068.

### C. *Uncalled Witnesses—Steve Betro and Gary Johnson*

Harrington identified the petitioner as wearing a leather jacket at the time of the murder. The petitioner alleges that the "only sound trial strategy was for the defense to challenge Harrington's stories on all points and attack his credibility." Appellant's Br. at 34. Mr. Galowski alleges that he was prejudiced when his trial attorney failed to interview witnesses who could

have verified that the leather jacket had been ruined. Specifically, Mr. Galowski alleges that he was prejudiced by Ms. Sfasciotti's failure to interview his friends, Gary Johnson and Steve Betro. Both of these witnesses were on trial counsel's list of people to interview. The Wisconsin Court of Appeals found that trial counsel was not deficient when she failed to interview Betro because he could not be located, but that failing to interview Johnson was deficient representation. Wis.Mem. op. at 7.

█ Because it is clear that Mr. Galowski suffered no prejudice from the failure to interview Betro and Johnson, we need not decide whether Ms. Sfasciotti was deficient in her representation.[14] *See Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069 ("a court need not determine whether counsel's performance was deficient before examining the prejudice suffered"). The evidence that Mr. Galowski's jacket was ruined or torn is not probative of his guilt or innocence. Betro and Johnson could have testified only that a *leather jacket* was damaged. They could not testify to what the petitioner did with the jacket after the accident—whether he replaced it, had it fixed, or got rid of it altogether. Furthermore, Harrington did not describe the condition of the leather jacket that Mr. Galowski allegedly wore on the morning of the murders. There is certainly not a "reasonable probability that, but for counsel's unprofessional error [in failing to contact Betro and Johnson,] the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068.

### D. *Mistrial*

Mr. Galowski asserts that Ms. Sfasciotti was deficient when she failed to move for a

---

**14.** We note, however, that defense counsel need not chase down every lead, without regard to counsel's own calculation of the potential for uncovering useful information. Instead, *Strickland* stressed that counsel's determination of whether to pursue a lead "may be determined or substantially influenced by the defendant's own statements or actions.... [W]hen a defendant has given counsel reason to believe that pursu-

ing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable." 466 U.S. at 691, 104 S.Ct. at 2066. Counsel in this case could well have determined that pursuing Betro or Johnson would have been fruitless, considering the weight that a jury would be likely to assign their proposed testimony.

mistrial on the ground that Harrington gave perjured testimony during the preliminary hearing. Petitioner claims that Ms. Sfasciotti failed to request a mistrial because "she thought the judge would deny her motion." Appellant's Br. at 35.

Petitioner's claim is based on a statement made by Ms. Sfasciotti during the post-conviction hearing:

Q: Going back to the agreement, the terms in the agreement stated that Harrington shall testify truthfully at any trial or proceedings. At the point of trial when you became aware that he had committed perjury at the preliminary, did you move for mistrial?

A: [Ms. Sfasciotti] I don't recall whether I did or I didn't. I don't know, because I have not read the transcripts of the trial.

Q: Are those grounds to move for a mistrial?

A: I would have moved for a mistrial. I probably wouldn't have gotten it granted.

R.15 at 205.

▪ We conclude that Ms. Sfasciotti's failure to move for a mistrial did not constitute deficient performance. The Supreme Court noted in *Strickland* that

[j]udicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction.... Because of the difficulties inherent in the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689, 104 S.Ct. at 2065 (quoting *Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955)) (citation

omitted). The decision whether to move for a mistrial or instead to proceed to judgment with the expectation that the client will be acquitted is one of trial strategy. *See Sanders v. Israel,* 717 F.2d 422, 424 (7th Cir.1983) ("[T]rial strategy was not to move for a mistrial in the hope that he would be acquitted on the basis of the jury's knowledge that a key state eyewitness had committed perjury."), *cert. denied,* 465 U.S. 1033, 104 S.Ct. 1302, 79 L.Ed.2d 701 (1984); *United States v. Miller,* 742 F.2d 1279, 1285 (11th Cir.1984) ("[A] trial strategy decision a defendant often encounters after prejudicial error has allegedly occurred [is] whether to move for a mistrial or to proceed on to a verdict in the hope of obtaining an acquittal."), *cert. denied,* 469 U.S. 1216, 105 S.Ct. 1194, 84 L.Ed.2d 340 (1985).

While Ms. Sfasciotti did not move for a mistrial, she made the jury aware of the inconsistencies in Harrington's testimony.[15] We cannot fault Ms. Sfasciotti "in retrospect for an omission which may well have been a proper exercise of [her] role, and a legitimate effort 'to present the client's case in accord with [her] professional evaluation.'" *Cantone v. Superintendent,* 759 F.2d 207, 219 (2d Cir.) (quoting *Jones v. Barnes,* 463 U.S. 745, 751, 103 S.Ct. 3308, 3312, 77 L.Ed.2d 987 (1983)), *cert. denied,* 474 U.S. 835, 106 S.Ct. 109, 88 L.Ed.2d 89 (1985); *see also Kubat v. Thieret,* 867 F.2d 351, 361 (7th Cir.) ("Given the difficulty of the decision, we cannot in hindsight say that counsel's choice was professionally incompetent."), *cert. denied,* —— U.S. ——, 110 S.Ct. 206, 107 L.Ed.2d 159 (1989). Mr. Galowski has not met his burden of proving that Ms. Sfasciotti was ineffective in her representation when she failed to move for a mistrial based on Harrington's perjured testimony.

*E. Cumulative Prejudice*

▪ The petitioner's final argument for ineffective assistance of counsel is that,

---

**15.** In her cross-examination of Harrington, before the jury, Ms. Sfasciotti questioned him about his changed story from his testimony at the preliminary hearing to the trial. In her closing, Ms. Sfasciotti once again raised for the jury the question of Harrington's veracity by relating the discrepancies between his trial testimony and the testimony at the preliminary hearing.

even if Ms. Sfasciotti's "individual acts or omissions are not so grievous as to merit a finding of incompetence or of prejudice from incompetence, their cumulative effect may be substantial enough to meet the *Strickland* test." Appellant's Br. at 37; *see Kubat*, 867 F.2d at 370; *Crisp v. Duckworth*, 743 F.2d 580, 583 (7th Cir.1984), *cert. denied*, 469 U.S. 1226, 105 S.Ct. 1221, 84 L.Ed.2d 361 (1985); *United States v. Merritt*, 528 F.2d 650, 651 (7th Cir.1976) (per curiam). We conclude that even if Mr. Galowski has "overcome the presumption that his trial counsel provided reasonable professional assistance, ... and has established that counsel was in fact incompetent," he has not shown that his "'counsel's conduct so undermined the proper functioning of the adversarial process that the trial court cannot be relied on as having produced a just result.'" *Crisp*, 743 F.2d at 583 (quoting *Strickland*, 466 U.S. at 686, 104 S.Ct. at 2063) (citations omitted).

Ms. Sfasciotti was retained almost a month after the murders. She made a list of witnesses to contact and interviewed a good number of these people. A review of the post-trial hearing reveals that Gerald and Kathy Hanson, Gary Johnson, and Steve Betro would not have been, as we have previously indicated, effective witnesses. The Hansons, even had they been interviewed a month after the murders, would have been unable to verify the petitioner's alibi that he was fixing a car at the time of the murders. Furthermore, Betro and Johnson would have been unable to testify definitely that Mr. Galowski did not own a black leather jacket at the time of the murders. Moreover, Ms. Sfasciotti presented witnesses who brought into question Harrington's testimony, who impeached Harrington on his employment record, and who provided information that a gun deal that had soured may have been the motive for someone other than the petitioner to have killed Mr. Dethardt. We do not consider Ms. Sfasciotti's representation to be so deficient as to create a cumulative violation of *Strickland*.

* Richard Thornburgh, Attorney General, is substituted for Edward Meese, III, former Attorney General, pursuant to Fed.R.App.P. 43(c)(1).

## CONCLUSION

We have carefully reviewed the record in this case, including the transcripts of the trial and the post-conviction hearing. The judgment of the district court denying petitioner's writ of habeas corpus is thus affirmed.

AFFIRMED.