Filed 7/31/13  P. v. Ayrapetyan CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE


| | |
|---|---|
| THE PEOPLE, | B240582 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. LA069877) |
| v. | |
| GRIGOR AYRAPETYAN, | |
| Defendant and Appellant. | |


APPEAL from a judgment of the Superior Court of Los Angeles County, Joseph A. Brandolino, Judge.  Affirmed.

Kevin Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, James William Bilderback II and Tita Nguyen, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant Grigor Ayrapetyan appeals from the judgment entered following his convictions by jury on count 1 – unlawful driving or taking of a vehicle (Veh. Code, § 10851, subd. (a)) and count 2 – providing false information to a police officer (Veh. Code, § 31). The court sentenced him to county jail for three years six months. We affirm the judgment.

<b><i>FACTUAL SUMMARY</i></b>

Viewed in accordance with the usual rules on appeal (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206 (*Ochoa*)), the evidence established that on November 18, 2011, Ivelise Markovits owned a 2007 Lexus ES250 (license plate No. 5ZSE427). Markovits testified that between 8:00 p.m. on November 18, 2011, and some time on November 19, 2011, someone stole the Lexus from her Sherman Oaks carport. Markovits testified she gave no one permission to take her car, did not give appellant permission to take or drive it, and did not know him. Markovits did not give permission to Gregori Aslanyan to drive her car. Markovits might have left her key in the car and did not know if she had locked it.

Seda Ayrapetyan (Seda), appellant's sister, testified that about 9:00 p.m. on January 11, 2012, appellant began driving her and another person in a 2007 Lexus that Seda had never seen before. A police officer stopped the car sometime after midnight. Appellant and Seda lived with Marie Aslanyan (Marie), Seda's mother. The car did not belong to Marie. Appellant was not known by the name Gregori Aslania. Appellant had used the name Ayrapetyan all his life.

Los Angeles Police Officer Israel Lopez testified he was working on January 11, 2012. About 12:30 a.m., Lopez saw the Lexus (license plate number 5ZSE427) travelling near Roscoe and Noble in Los Angeles. Lopez conducted a traffic stop of the car because its high beams were operating. Appellant was the car's driver and there were two passengers, including Seda. Appellant had a key to the car. Lopez asked appellant for his driver's license, registration, and insurance. Appellant did not provide a driver's license, and indicated he did not have one. The prosecutor asked Lopez, "How about registration and insurance" and Lopez replied no.

2

Appellant identified himself as Gregori Aslania, born on January 1, 1984. At some point appellant said he had been using marijuana earlier. Lopez was unable to verify the identification information, but Lopez determined the car had been reported stolen.

Lopez asked who the car belonged to, and appellant replied it belonged to his mother. Lopez asked for appellant's mother's information and determined it did not match the correct vehicle registration information. Appellant told Lopez that appellant's mother's name was Marie Aslanyan. Lopez spoke with Seda who identified appellant. Lopez confronted appellant with appellant's correct identification information and the fact the car did not belong to appellant's mother. Lopez again asked appellant who the car belonged to, and appellant changed his story and said it belonged to a friend. Appellant provided no specific information about the friend.

Lopez contacted Markovits, the registered owner of the Lexus, and she told him the car had been stolen. Lopez confronted appellant with the fact the car had been reported stolen. Lopez told appellant that Lopez had spoken on the phone with the registered owner. Lopez also told appellant that the registered owner had said she had never heard of "his name" or "his correct name," her car remained stolen, and she had not loaned it to anyone. Appellant continued to say it was a misunderstanding, it was his friend's car, and "he hadn't stolen it." Appellant insisted appellant's name was Gregori Aslania.

Lopez also testified that when Lopez told appellant that appellant's mother was not the registered owner of the car, appellant provided the name and address of the registered owner. The prosecutor asked Lopez if appellant said how appellant obtained the car from the registered owner, and Lopez replied that appellant said that appellant's friend had loaned it to appellant.

Lopez testified appellant said that appellant knew the registered owner of the car, and that appellant did landscaping work for her. Lopez asked Markovits if appellant did landscaping work for her. Markovits did not recognize appellant's name and told Lopez that Mexicans did her landscaping work. Lopez took appellant into custody. Appellant continued to insist his name was Gregori Aslania, but Seda told Lopez that appellant's

3

name was Gregory Ayrapetyan and his birth date was October 1, 1986. Papers belonging to Markovits, as well as her registration, were in the car. Appellant presented no defense evidence.

## ISSUES

Appellant claims (1) the trial court erroneously denied his continuance motion, (2) the trial court erroneously denied the prosecutor's request for an interpreter for appellant and erroneously ruled appellant knowingly waived his right to testify, (3) there was insufficient evidence supporting his conviction on count 1, and (4) the trial court erroneously imposed an upper term on count 1 and a consecutive term on count 2.

## DISCUSSION

1. *The Trial Court Properly Denied Any Continuance Motion.*

   a. *Pertinent Facts.*

At all times below mentioned, appellant was represented by the same deputy public defender. Appellant's preliminary hearing was conducted on January 25, 2012. On all subsequent dates, Judge Joseph A. Brandolino presided over court proceedings. On February 8, 2012, the court arraigned appellant and he pled not guilty. The court set a pretrial date of March 8, 2012 and set April 9, 2012 as the last day for trial. After the pretrial conference on March 8, 2012, the court, on April 9, 2012, called the case for jury trial. The April 9, 2012 minute order reflects appellant was ready for trial. Appellant was in custody on February 8, March 8, and April 9, 2012. On April 9, 2012, the court trailed the matter to April 10, 2012 for jury trial as day 8 of 10.

On April 10, 2012, the court called the case for jury trial. The court indicated prospective jurors were en route, the court wanted to make a last attempt to determine if a disposition were possible, and the court asked the prosecutor to repeat his plea bargain offer to appellant. The prosecutor initially indicated the offer was appellant would plead to count 1 with the understanding the court would place him on felony probation for three years in the present case on the condition he would serve 180 days in the county jail. The

prosecutor also indicated appellant would serve a consecutive 180 days in the county jail in a probation case.

Appellant's counsel then told the court that appellant had given a note to appellant's counsel. After a later unreported discussion, the prosecutor stated, "180 days on count 1 with felony probation; 180 days on count 2, and that would be it."

The following later occurred: "[Appellant's Counsel]: Your Honor, my client has given me a note asking me to continue to April 26th for – I can't read this. A-T- -- Attorney Mr. [*sic*] Hoffman. [¶] The Court: Okay. Well, we are ready to start trial. If you want to continue the trial, it's too late for that. Unfortunately, we are ready to go. I would consider that another time; so I am not going to choose to grant that request at this time." During subsequent proceedings that day, the court discussed whether there might be a disposition. Appellant communicated only by nodding his head and writing notes to his counsel. Appellant ultimately rejected the prosecutor's plea bargain offer. The prospective jurors arrived and were sworn.

b. *Analysis*.

Appellant claims the trial court erroneously denied his continuance motion. We disagree. Appellant was at all times represented by the same deputy public defender. Appellant never expressed an interest in retaining counsel, or seeking a continuance for that purpose, on January 25, February 8, March 8, or April 9, 2012.[1] The record reflects that on April 9, 2012, appellant was ready for trial.

---

[1] The April 18, 2012 minute order reflecting April 9, 2012 proceedings indicates the trial court on the latter date denied appellant's "motion to continue for defendant to hire private counsel" (capitalization omitted). There is no reporter's transcript of that proceeding. As mentioned, the reporter's transcript for April 10, 2012 proceedings indicates the trial court denied appellant's alleged continuance motion on that date. The minute order for April 10, 2012 proceedings indicates both parties announced ready for trial and does not refer to a continuance motion. Appellant complains only about the trial court's April 10, 2012 denial of his continuance motion. We assume the reporter's transcript accurately reflects the pertinent proceedings and any continuance motion was made only on April 10, 2012. (Cf. *People v. Smith* (1983) 33 Cal.3d 596, 599; *People v. Mesa* (1975) 14 Cal.3d 466, 471.)

On April 10, 2012, appellant's counsel made no continuance motion. She had announced ready for trial. Appellant's counsel merely communicated to the court that appellant (on the eve of trial as prospective jurors were en route to the courtroom) had given appellant's counsel a note asking counsel to continue to April 26 "for . . . Attorney Mr. Hoffman." However, appellant provided no information as to who "Attorney Mr. Hoffman" was, whether "Attorney Mr. Hoffman" was or was not an attorney, how, if at all, Hoffman was or could be involved in this case, or whether appellant had ever contacted Hoffman.

Nor, assuming Hoffman was an attorney, did appellant provide any information as to whether appellant, or anyone else on his behalf, had spoken to or consulted with Hoffman, whether Hoffman had been retained, whether Hoffman had agreed to appear at any time or for any purpose in this case (much less on April 26) or whether appellant wanted merely to consult with Hoffman as distinguished from wanting to retain him. Any participation of retained counsel in this case was speculative.

Nothing in the record suggests appellant made a good faith effort to consult with or retain Hoffman prior to April 10, 2012. Appellant made no showing he was financially unable to consult with or retain Hoffman earlier, but financially able on April 10, 2012. Appellant made no showing his court-appointed counsel previously had been unprepared or otherwise unable to adequately represent appellant.

Appellant suggests the trial court had a duty to inquire into the basis for appellant's request. We reject the suggestion. The burden was on appellant to justify his alleged continuance request. "A continuance will be granted only on a showing of good cause. (§ 1050, subd. (e).) Both *defendant and counsel must demonstrate* that they exercised due diligence and all reasonable efforts to prepare for trial [citation], and the court has broad discretion to grant or deny the motion for continuance [citations])." (*People v. Grant* (1988) 45 Cal.3d 829, 844, italics added.)

In *People v. Reaves* (1974) 42 Cal.App.3d 852 (*Reaves*), the trial court denied a defendant's motion to continue to permit him to retain counsel. The *Reaves* court stated, "a trial court does not abuse its discretion when it refuses to grant such motion for a continuance which is made on the very day of trial, after the matter has been pending for five months and the defendant has previously and successfully obtained numerous continuances *without indicating that there existed any reason to change attorneys*." (*Id*. at p. 856, italics added.)

In *People v. Molina* (1977) 74 Cal.App.3d 544, the court stated, "while generally a defendant is entitled to be represented by counsel of his own choosing, the right must be asserted in a timely fashion so that the trial court may, in its discretion *and without further inquiry*, deny a motion for a continuance to secure new counsel if the motion is made during trial. (*People v. Reaves* (1974) 42 Cal.App.3d 852, 856 [117 Cal.Rptr. 163], and cases there cited.)" (*Id.* at p. 548, italics added.) *Molina* later stated, "We therefore conclude that the duty of trial court inquiry into the reasons why a defendant seeks to discharge counsel applies only when the defendant asserts directly or by implication that his counsel's performance has been so inadequate as to deny him his constitutional right to effective counsel." (*Id*. at p. 549.)

Like the defendant in *Molina*, appellant made no *Marsden*[2] motion as to his court-appointed counsel. In *Molina* the defendant made his continuance motion "in the midst of impaneling a jury." (*Molina, supra,* 74 Cal.App.3d at p. 548.) In the present case, any continuance motion was made while prospective jurors were en route to the courtroom. Nonetheless, we believe *Molina's* reasoning applies here.

Moreover, appellant's actions did not occur in a vacuum. As part 2 of our Discussion, *infra*, demonstrates, appellant's various nods of his head, failures to speak orally, and writing of notes to his counsel during the above proceedings were part of a deliberate effort to mislead Judge Brandolino into thinking appellant did not understand or

---

**2** *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*).

7

speak English. Appellant's efforts were designed to delay the proceedings unnecessarily and infect the record with what appellant believed might be appealable error. Viewed from this perspective, appellant's giving of the vague note asking the deputy public defender for a continuance to April 26 for "Attorney Mr. Hoffman," as well as appellant's failure to provide further information about appellant's request, was a dilatory ploy. The denial of any continuance motion by appellant was well within the discretion of the court. (Cf. *People v. Jeffers* (1987) 188 Cal.App.3d 840, 850-851.)

Finally, "[a] reviewing court considers the circumstances of each case and the reasons presented for the request to determine whether a trial court's denial of a continuance was so arbitrary as to deny due process. [Citation.] Absent a showing of an abuse of discretion and prejudice, the trial court's denial does not warrant reversal. [Citation.]" (*People v. Doolin* (2009) 45 Cal.4th 390, 450.) The requisite showing was not made here. The trial court did not violate appellant's constitutional rights by refusing to continue the case.

2. *Appellant's Waiver of His Right to Testify Was Valid.*

   a. *Pertinent Facts.*

   At the January 25, 2012 preliminary hearing, appellant was represented by a deputy public defender and the following occurred: "[Appellant's Counsel]: My client would like to get his offer directly from the D.A. [¶] [The Prosecutor]: Absolutely. [¶] The offer is a plea to count 1. You'll be placed on three years of formal felony probation. You'll serve 180 days in the county jail. You'll have to pay restitution to the victims in this case. . . . [Y]ou also have a misdemeanor that you're on probation for and you have to serve 180 days consecutive as well. So it will be 180 days on this case plus 180 days on the other case."

   The following then occurred: "The Defendant: Miss [Prosecutor], if I can get -- if I can get reassigned -- reassigned to formal probation and -- and -- and house arrest? That way I can complete -- that way I can do the -- I won't lose the job and the college and the apartment. [¶] I mean, house arrest on my case is not -- my case is not hurting nobody.

8

House arrest would be able to give me capability to be able to take care of the daughter and the apartment and the job and the college."

The colloquy continued, "[The Prosecutor]: If I'm understanding you, you want to do your 180 plus your 180 on house arrest? [¶] The Defendant: Yes. [¶] [The Prosecutor]: Okay. I can make a phone call for you, sir, to find out, if that's your counter-offer. [¶] The Defendant: Yes. I can bring the paperwork from the college and so on and so forth." The parties ultimately did not agree on a disposition. Appellant was held to answer at the preliminary hearing. At no time during the proceedings on January 25, 2012, did anyone suggest appellant did not understand or could not speak English, or that appellant needed the assistance of an interpreter.

As discussed, Judge Brandolino was not the preliminary hearing magistrate but presided over subsequent proceedings. On February 8, 2012, appellant pled not guilty. The court scheduled a pretrial conference for March 8, 2012, and scheduled April 9, 2012, as the last day for trial. As mentioned, the minute order reflecting April 9, 2012 proceedings indicates appellant was ready for trial. At no time on or before April 9, 2012, did appellant request appointment of an interpreter. As discussed, on April 10, 2012, the court called the case for jury trial and appellant communicated by nods, and by a written note to his counsel asking his counsel to continue the case.

On April 11, 2012, after the People rested and outside the presence of the jury, the court asked if the defense wished to present evidence. The prosecutor stated, "I just inquired and he told me no as to whether or not he wants to testify." The following then occurred: "[The Prosecutor]: Your Honor, is the court going to advise him of his right to testify and so forth? [¶] The Court: Do you think it's necessary? I don't know that it's necessary. [¶] [Appellant's Counsel]: With him I do. [¶] [The Prosecutor:] Just an abundance of caution because of his nonhelpful nature. [¶] [Appellant's Counsel]: He still is not speaking, by the way. He nods at me and writes notes."

The following later occurred outside the presence of the jury. "[The Court]: Before we continue, Mr. Ayrapetyan, I just want to make sure that you understand you

9

do have a right to testify if you wish to do so. If you wish to do so, counsel can question you and you would be subject to cross-examination just like any other witness. However, you also have the right not to testify, and if you choose not to testify, I will instruct the jury that they are not to consider that in any way in deliberations. So you do have a constitutional right if you choose that as well. [¶] Let me just clarify that you do understand that you have the right to either testify or not to testify. It's your choice. Do you understand that? [¶] The Defendant: (The defendant shakes his head.) [¶] The Court: You are shaking your head that you do not? What is it that you do not understand? [¶] (The defendant writes on a piece of paper.) [¶] [Appellant's Counsel]: Let the record reflect that my client is writing out his response. [¶] The Court: Would you read that. [¶] [Appellant's Counsel]: He has written 'I am bad in English.' "

The following then occurred: "The Court: Okay. Let me ask [appellant's counsel]. Have you had any difficulties communicating with him? [¶] [Appellant's Counsel]: Other than the last few days where he's refused to speak and only been nodding his head in response to my questions and writing notes, no, I have not had any problems. The court appearances of January 25th, February 8th, March 8th, on all three of those court appearances we had conversations in English with absolutely no problem with communication. [¶] The Court: Mr. Ayrapetyan, I want you to listen very carefully. You have the right to testify. You can choose to testify, which means take the stand and testify. Do you understand that? [¶] The Defendant: (The defendant shakes his head.) [¶] The Court: You do not. You are shaking your head no? What is it that you don't understand? [¶] (The defendant writes on a piece of paper.) [¶] [Appellant's Counsel]: Again, he is writing out his response. [¶] The Court: Yes, for the record, writing his response. [¶] [Appellant's Counsel]: 'English words are too big for me.' "

The colloquy continued, "The Court: All right. And for the record, the defendant is laughing for the record. All right? [¶] Mr. Ayrapetyan, I think you think this is a big joke. I don't believe you. Your refusal to speak is obstruction to the court. [¶] Let me

just ask [appellant's counsel]. Have you communicated to the defendant concerning his right to testify and not to testify and discussed it with him? [¶] [Appellant's Counsel]: Yes. [¶] The Court: And you believe you've been able to discuss it sufficiently? [¶] [Appellant's Counsel]: Yes. [¶] The Court: What has he indicated to you that he wishes to do? [¶] [Appellant's Counsel]: He had previously indicated a desire to testify, but today he has indicated no. [¶] The Court: Very well. All right. And how has he communicated that to you today? [¶] [Appellant's Counsel]: By nodding his head, shaking it side to side."

The prosecutor noted appellant previously had indicated he had wanted to testify. The prosecutor asked if the court could inquire what appellant's preferred language was so he could have an interpreter solely with respect to the issue of whether he was waiving his fundamental right to testify. The prosecutor indicated he was trying to avoid an appealable issue.

The court stated, "He's never indicated that he doesn't understand English. This is the first time that the court has had any inkling in the whole time this case has been pending that the defendant does not understand English. I don't believe him. And counsel has indicated she has been able to communicate with him clearly. And also, the witness --."[3] The following later occurred: "The Court: . . . Mr. Ayrapetyan, do you wish to testify? [¶] The Defendant: (The defendant shakes his head.) [¶] The Court: You are shaking your head no. Very well. That's fine. The court is satisfied."

b. *Analysis*.

Appellant claims the trial court erred by refusing the prosecutor's request to appoint an interpreter for appellant and by concluding appellant knowingly and intelligently waived his right to testify. We disagree.

---

[3] The prosecutor asked that appellant "write out" and that that writing be kept as an exhibit for appellate purposes. The court indicated that would be done. The record before this court contains no such writing.

"A person unable to understand English who is charged with a crime has a right to an interpreter throughout the proceedings." (Cal. Const., art. I, § 14.) "However, an affirmative showing of need is required." (*In re Raymundo B.* (1988) 203 Cal.App.3d 1447, 1453.) The defendant bears the burden of showing the defendant could not understand English. (*Id.* at p. 1456.) We review for abuse of discretion a trial court's refusal to appoint an interpreter for a defendant. (*Id.* at pp. 1453, 1455-1456, 1458.)

As to whether appellant was entitled to an interpreter, the prosecutor suggested the court appoint one but the record fails to reflect appellant ever asked for one. We assume without deciding the issue of whether the trial court erred by failing to appoint an interpreter is preserved for appellate review.

Focusing on the proceedings before Judge Brandolino alone, i.e., on and after February 8, 2012, again, we note appellant never asked for an interpreter. The minute order reflecting April 9, 2012 proceedings indicated appellant was ready for trial. On April 11, 2012, the prosecutor indicated appellant and/or his counsel said appellant would not testify. Appellant's counsel later indicated she had experienced no problems communicating with appellant "other than the last few days where he's *refused* to speak and only been nodding his head in response to my questions and writing notes . . . ." (Italics added.) Appellant's counsel also noted that during the three prior court proceedings, she and appellant conversed in English "with absolutely no problem with communication."

On April 11, 2012, appellant indicated he was " 'bad in English.' " However, when later indicating " 'English words are too big for me,' " he was laughing. The court indicated appellant thought "this [was] a big joke." The court disbelieved appellant and concluded he was refusing to speak and obstructing the court. Appellant's counsel indicated she had discussed sufficiently with appellant his right to testify and right not to testify. The court later noted appellant had not previously indicated he did not understand English.

We note Lopez already had testified at trial by the time Judge Brandolino dealt with the issue of whether appellant was waiving his right to testify. Judge Brandolino heard Lopez's testimony, and Lopez never testified he had any problem communicating with appellant following the traffic stop. Judge Brandolino also heard the testimony of Lopez concerning appellant's multiple fabrications (which we detail in part 2 of our Discussion, *infra*) following the traffic stop. Appellant's fabrications lessened the credibility of his asserted difficulty with English. The record fails to demonstrate any need for an interpreter. The trial court did not abuse its discretion by denying any request to appoint one.

Even if the trial court erred, it does not follow that we must reverse the judgment. Judge Brandolino was not the preliminary hearing magistrate, and it is not clear from the record whether Judge Brandolino was familiar with that portion of the preliminary hearing transcript reflecting appellant's conversation with the prosecutor during the January 25, 2012 preliminary hearing proceedings. However, those proceedings further demonstrate appellant spoke English.

During the January 25, 2012 proceedings, appellant's counsel indicated appellant wanted to "get his offer *directly* from the D.A." (Italics added.) Although neither party on appeal refers to the ensuing conversation, during which appellant personally attempted to negotiate a disposition with the prosecutor, we believe that that conversation demonstrates appellant understood English perfectly and belies appellant's claim he was " 'bad in English' " or " 'English words are too big for me.' "

Indeed, the record indicates appellant began pretending he did not understand English only after January 25, 2012. That is, he pretended he did not understand English only after he did not get the disposition he had proposed on January 25, 2012—a plea to count 1 with the understanding he would serve 360 days under house arrest instead of in the county jail. In part 4 of our Discussion, we note appellant's criminal background; he is no stranger to the criminal justice system. Any trial court error in failing to appoint an interpreter was harmless under any conceivable standard because the record outside the

13

record of the April 11, 2012 proceedings during which the trial court refused to appoint an interpreter demonstrates appellant did not need an interpreter. (Cf. *People v. Rodriguez* (1986) 42 Cal.3d 1005, 1010-1016; *People v. Watson* (1956) 46 Cal.2d 818, 836; *Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705].)

As to whether appellant properly waived his right to testify, appellant concedes "California law generally does not require the court to conduct an affirmative inquiry to determine whether a defendant has knowingly waived his right to testify if the defendant is represented by competent counsel." (Rep/10) Appellant was represented by competent counsel. The trial court had no duty to conduct the above mentioned inquiry.

Moreover, the record in this case demonstrates appellant fully understood English and merely pretended otherwise. His January 25, 2012 negotiations demonstrate he was willing to plead guilty or no contest, and thereby forgo testifying at a trial, if he had received the disposition he had wanted.

On April 11, 2012, the prosecutor indicated appellant and/or his counsel told the prosecutor that appellant did not want to testify. Appellant's counsel represented to the court that on April 11, 2012, appellant, "nodding his head, shaking it side to side" indicated appellant did not want to testify. The trial court later directly asked appellant if he wanted to testify, appellant shook his head, and the court observed appellant was "shaking [his] head no."

The record demonstrates appellant knowingly, intelligently, and voluntarily waived his right to testify. The fact the trial court on April 11, 2012, in its zeal to safeguard appellant's right to testify, conducted an inquiry while appellant was trifling with the court imposed no duty on the court to inquire about, or ensure, that appellant's waiver of his right to testify was voluntary and intelligent. Nonetheless, the record affirmatively demonstrates appellant's waiver was.[4]

---

[4]    Appellant, relying on *Ortega v. O'Leary* (7th Cir. 1988) 843 F.2d 258 (*Ortega*), maintains that "once a court undertakes such an inquiry, it must make sure that the defendant's waiver is voluntary and intelligent." (Rep/10) We disagree. In *Ortega*, the defendant claimed his trial counsel was fabricating when counsel said counsel and the

3. *There Was Sufficient Evidence Supporting Appellant's Conviction on Count 1.*

Appellant claims there is insufficient evidence supporting his conviction on count 1. We reject the claim. The "elements necessary to establish a violation of section 10851 of the Vehicle Code are the defendant's driving or taking of a vehicle belonging to another person, without the owner's consent, and with specific intent to permanently or temporarily deprive the owner of title or possession." (*People v. Windham* (1987) 194 Cal.App.3d 1580, 1590 (*Windham*).)

In the present case, there was substantial evidence appellant was driving the Lexus on January 11 or 12, 2012, without the consent of the owner (Markovits), and that someone stole her car on November 18 or 19, 2011. Appellant concedes he was driving the Lexus on January 11, 2012, does not dispute he was doing so without the owner's consent, and does not dispute the car was stolen. Appellant disputes only the sufficiency of the evidence that he had the requisite intent.

---

defendant had decided the defendant would not testify. The defendant personally and repeatedly asked the court to permit him to testify, but the court denied the requests. (*Id.* at pp. 259-260, 262.) Those facts are not present in the instant case. Moreover, *Ortega* concluded the trial court improperly denied the defendant's request to testify (*id.* at pp. 262-263), but held the error was harmless beyond a reasonable doubt in light of the overwhelming evidence of the defendant's guilt. (*Ibid.*)

*Ortega* later stated, "[a]lthough the evidence in this habeas corpus case compels a finding of harmless error, we strongly emphasize that a defendant's *request* to testify should never be summarily dismissed by a trial court. Indeed, were this issue before us on direct review of a federal criminal case another outcome might obtain. When waiver of such an important right is at issue, a trial court should carefully ascertain through a methodical inquiry whether this right has been voluntarily and intelligently forfeited. The trial court in this case erred in failing to determine whether or not Ortega had voluntarily and intelligently waived his right to testify and improperly failed to permit the full exercise of this right." (*Ortega*, *supra*, 843 F.2d at p. 263, italics added.) This language was in the context of the defendant's repeated requests to testify. Appellant made no request to testify. There was overwhelming evidence of appellant's guilt in this case; therefore, any alleged inquiry error was harmless. (Cf. *Ortega*, at pp. 262-263.) We are not obligated to follow federal appellate court authority in any event. (Cf. *People v. Figueroa* (1992) 2 Cal.App.4th 1584, 1587.) Appellant's reliance on *Ortega* is misplaced.

15

" 'Once the unlawful taking of the vehicle has been established, possession of the recently taken vehicle by the defendant with *slight* corroboration through *statements* . . . tending to show guilt is sufficient to sustain a conviction of Vehicle Code section 10851. [Citations.]' [Citation.]" (*Windham*, *supra*, 194 Cal.App.3d at p. 1590, italics added.)

It is settled, "[p]ossession of recently *stolen* property is so incriminating that to warrant conviction there need only be, in addition to possession, slight corroboration in the form of statements . . . of the defendant tending to show his guilt. [Citations.] This court stated in *People v. Lyons*, 50 Cal.2d 245, 258 [324 P.2d 556], '[Possession] of stolen property, accompanied by . . . an *unsatisfactory* explanation of the possession, or by suspicious circumstances, will justify an inference that the goods were received with knowledge that they had been stolen. . . . [¶] It has frequently been held that possession of recently stolen property together with a *false explanation* will support a conviction. [Citations.]" (*People v. McFarland* (1962) 58 Cal.2d 748, 754 (*McFarland*), first and second italics added).

The Lexus was stolen about November 18 or 19, 2011, and appellant was driving it on January 11 or 12, 2012. Accordingly, on January 11 or 12, 2012, appellant was in possession of recently stolen property. (*People v. Anderson* (1989) 210 Cal.App.3d 414, 421-422 [four and one-half months is sufficiently recent].)

Moreover, there was substantial evidence as follows. Seda lived with appellant, but had never seen the Lexus before, and it did not belong to Marie. Appellant did not have a driver's license, registration, or insurance. These circumstances, considered with the evidence discussed below, were suspicious.

Appellant fabricated when he told Officer Lopez that appellant's name was Gregori Aslania and appellant's birth date was January 1, 1984. Appellant also fabricated when he told Lopez (1) the Lexus belonged to Marie, (2) the Lexus belonged to appellant's friend, (3) appellant's friend loaned the Lexus to appellant, (4) appellant knew the registered owner of the Lexus, and (5) appellant did landscaping work for Markovits. Appellant concedes in his reply brief that it "might well be the case" (Rep/12) that appellant "lied to

16

police about the ownership of the vehicle." There is no dispute appellant provided false information to a police officer (Lopez) in violation of Vehicle Code section 31 (count 2). There was sufficient evidence to convince a rational trier of fact, beyond a reasonable doubt, that on January 11 or 12, 2012, appellant drove the Lexus in violation of Vehicle Code section 10851, subdivision (a). (Cf. *Ochoa*, *supra*, 6 Cal.4th at p. 1206; *McFarland*, *supra*, 58 Cal.2d at p. 754; *Windham*, *supra*, 194 Cal.App.3d at p. 1590.)

4. *Appellant's Sentence Was Proper*.

    a. *Pertinent Facts*.

The probation report prepared for a March 8, 2012 hearing reflects as follows. Appellant was born in 1986. As a juvenile, he suffered a 2001 sustained petition for vandalism, and a 2003 sustained petition for possession of a dirk or dagger. He was placed home on probation in both matters.

As an adult, appellant was convicted of grand theft (Pen. Code, § 487, subd. (a); case No. LAV0PY5240-01) and, on October 4, 2010, the court placed him on summary probation for three years, ordering him to serve eight days in the county jail. On March 21, 2011, the court revoked and reinstated probation, ordering him to serve 30 days in the county jail. On May 25, 2011, the court revoked and reinstated probation, ordering him to serve 320 days in the county jail.

On October 16, 2010, appellant was arrested for resisting a police officer (Pen. Code, § 148, subd. (a)(1); case No. LAV0PY06134-01) and, on October 25, 2010, the court placed him on summary probation for three years, ordering him to serve 30 days in the county jail. On May 25, 2011, the court terminated appellant's probation in that case, ordering him to serve 45 days in the county jail.

On May 4, 2011, appellant was arrested for vehicle theft (Veh. Code, § 10851, subd. (a); case No. LAV1PY02410-01) and, on May 25, 2011, the court placed him on probation for three years. The court scheduled a probation violation hearing for March 8, 2012.

The report thus indicates, inter alia, appellant was on probation for grand theft when he was arrested for resisting a police officer, and he was on probation for resisting a police officer when he was arrested for a violation of Vehicle Code section 10851, subdivision (a). The report also indicates appellant was on probation for the grand theft offense and on probation for the violation of Vehicle Code section 10851, subdivision (a) when he committed the present offenses. The report reflects he had three outstanding traffic warrants and no felony convictions.

The report states, "[t]he defendant's driving of a reported stolen vehicle, which he was not authorized per the owner, victim Markovits, and providing of false information to the arresting officer, is serious, and demonstrates an ongoing pattern of theft related behavior, for which the defendant is on misdemeanor probation. [¶] With no record of felony conviction, the defendant is eligible for probation, and for this reason, is viewed as marginally suitable for probation consideration, while noting concern with the theft related criminal history." (Some capitalization omitted.)

The report later states, "[w]hile probation is being recommended, it is hoped the defendant appreciates the need to change the theft related criminal behavior leading to multiple misdemeanor convictions, in that, failure to do so will leave few alternatives other than incarceration for the benefit and protection of the community, and property of others." (Some capitalization omitted.)

At the April 13, 2012 sentencing hearing, the court and appellant's counsel indicated they had read the probation report. The prosecutor recommended that, in the present case, the court place appellant on probation on the conditions, inter alia, that he serve 365 days in the county jail and do 60 days of Caltrans service. The prosecutor recommended that the court impose that jail term consecutively to appellant's sentence in his misdemeanor probation case so he would get credit for time served only in the probation case. The prosecutor recommended that if appellant refused probation, the court sentence him to three years in the county jail on count 1 with a concurrent six-month term on count 2. Appellant requested a shorter period of Caltrans service but otherwise did not

object at that time to the prosecutor's recommendations. The court asked if appellant wanted probation, and appellant nodded yes.

The court acknowledged appellant wanted probation and indicated appellant would serve less time in custody if the court placed him on probation. The court indicated however, the problem was that appellant was on probation when he committed the present offenses. The court then stated, ". . . here's my concern: . . . [A]side from his outstanding traffic warrants that are reflected in the probation report, his juvenile record, which includes a couple of sustained petitions, but just his adult record, . . . we have him – and, albeit, misdemeanors, but . . . he commits grand theft." The court then explained appellant was on probation for grand theft when he was convicted for resisting arrest, and was on probation in both of those cases when he was convicted of violating Vehicle Code section 10851, subdivision (a) in the pending probation case, and he was on probation in the last case when he committed the present offenses.

The court then stated, "[a]nd, in addition, Mr. Ayrapetyan has shown, I think, in my observations of him during the course of the proceedings, he hasn't taken the proceedings seriously, and that type of situation, even despite his – the way he's conducted himself in court, . . . I find him, . . . smirking a lot and laughing, . . . and, obviously, his refusal to speak when the court knows for a fact that he can speak, I don't think he's taking the proceedings seriously. [¶] I guess that confirms – even without his conduct in court, I think it confirms my belief, based on his criminal history and what I've heard about what happened in this case, that I don't have a lot of faith that . . . he's not just going to go back out and do it again, and the message needs to be sent, . . . so I'm not going to impose a probationary sentence. I've decided not to do that. So I'm just going to impose jail time. [¶] And then, hopefully, Mr. Ayrapetyan, you get the message that that's what happens if you screw up. And, . . . next time, it could be a lot more time."

The court sentenced appellant in the present case to three years six months in the county jail, consisting of the three-upper term on count 1 plus six months on count 2, with 188 days of precommitment credit. The court ordered that appellant serve that sentence

19

consecutively to a "non-probationary sentence" of 180 days in the county jail in his probation case for vehicle theft (case No. case No. LAV1PY02410-01).

After sentencing appellant and after the court advised appellant of his appellate rights, appellant's counsel stated, "the defense would be objecting to the high term in this case. We believe that mid term would be sufficient." The court indicated it understood, and proceedings were concluded.

b. *Analysis.*

Appellant claims the trial court erred by imposing an upper term on count 1 and a consecutive term on count 2. He argues the trial court improperly relied on appellant's courtroom demeanor to impose the upper term on count 1, improperly relied on his courtroom demeanor to impose the consecutive term on count 2, and therefore also improperly relied upon a single factor to impose both the upper term on count 1 and the consecutive sentence on count 2.

We conclude otherwise. First, appellant waived the issues by failing to timely raise them below. (Cf. *People v. Brown* (2000) 83 Cal.App.4th 1037, 1041-1042.) We note appellant posed only an untimely objection to imposition of the upper term on count 1 on the ground a middle term was sufficient.

Second, fairly read, the record reflects the trial court considered appellant's juvenile history, then his adult criminal history, then the fact appellant had not taken the proceedings seriously based on his courtroom conduct. The court then indicated that "even without [appellant's] conduct in court," the court believed, based on "[appellant's] criminal history and what I've heard about what happened in this case" that appellant would be a recidivist. The court then denied probation and later imposed sentence as previously indicated.

The court was entitled to rely on appellant's criminal history to deny probation (Cal. Rules of Court, rule 4.414(b)(1) [prior criminal record], (2) [prior performance on probation].) Notwithstanding appellant's suggestion to the contrary, the court was entitled

20

to rely on appellant's lack of remorse to the extent the court relied on that factor to deny probation. (Cal. Rules of Court, rule 4.414(b)(7).)

Similarly, the trial court was entitled to rely on appellant's criminal history to impose the upper term on count 1 (Cal. Rules of Court, rule 4.421(b)(2) [prior convictions as an adult or sustained juvenile petitions], rule 4.421(b)(4) [whether defendant was on probation when crime was committed], and rule 4.421(b)(5) [whether prior performance on probation was unsatisfactory].) Again, the trial court would have been entitled to rely on appellant's lack of remorse on this issue as well if the court did so. (Cf. *People v. Holguin* (1989) 213 Cal.App.3d 1308, 1319 (*Holguin*).) *People v. Key* (1984) 153 Cal.App.3d 888, cited by appellant, does not compel a contrary conclusion. (*Holguin*, at p. 1319.) Imposition of consecutive sentences was warranted because the crimes and their objectives were predominantly independent of each other. (Cal. Rules of Court, rule 4.425(a)(1).)

A single valid aggravating factor is sufficient to impose an upper term. (*People v. Osband* (1996) 13 Cal.4th 622, 728.) A single valid factor is sufficient to impose a consecutive sentence. (*Id*. at pp. 728-729.) No prejudicial sentencing error occurred. (Cf. *People v. Porter* (1987) 194 Cal.App.3d 34, 39; *People v. Blessing* (1979) 94 Cal.App.3d 835, 837-839.)

### *DISPOSITION*

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

KITCHING, J.

We concur:

CROSKEY, Acting P. J.

ALDRICH, J.

22